IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| John V. Norris, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 15 C 7306 |
| v. ) | |
| ) | Jeffrey T. Gilbert |
| Officer Bartunek, ) | Magistrate Judge |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff John Norris brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Will County Deputy Sheriff Brett Bartunek. Norris alleges that Bartunek improperly seized him for speeding and then "falsely cited" him for that offense. A screening order allowed Norris to proceed with a Fourth Amendment unlawful seizure claim and state law claims of false imprisonment and malicious prosecution. (ECF No. 5.) Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment. (ECF No. 41.) Bartunek's motion to strike portions of Norris' statement of facts (incorporated in Bartunek's reply, ECF No. 80) and motion for summary judgment (ECF No. 52) are now before the Court. For the reasons discussed below, Bartunek's motions to strike and for summary judgment are denied.

### I. BACKGROUND

#### A. Bartunek's Motion to Strike

In Bartunek's reply in support of his motion for summary judgment, he seeks to strike many of Norris' statements of fact—specifically, Norris' repeated assertions that he was traveling at 45 mph—because they are "not supported by documentary evidence." As the motion

to strike is intertwined with the merits of the summary judgment motion, it is discussed more fully below. For purposes of summarizing the facts, however, the Court notes that the only so-called "documentary evidence" about Norris' speed is the ticket he received, which appears to reflect Bartunek's purported belief that Norris was traveling at a rate of 55 mph. Both Norris and Bartunek also have offered their own views about the events on the night of the traffic stop. To the extent that these statements are self-serving, whether proffered by Norris or Bartunek, they are nevertheless admissible because they are based on personal knowledge. *See, e.g., Johnson v. Advocate Health & Hosps. Corp.*, No. 14 CV 8141, 2016 WL 5871489, at *1 (N.D. Ill. Oct. 7, 2016) (citing *Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 389 (7th Cir. 2010) ("Uncorroborated, self-serving testimony disputes a material fact only if it is based on personal knowledge or firsthand experience")). Admissible evidence about Norris' speed thus is not limited to the traffic ticket issued by Bartunek but also includes Norris' statements about the speed he was traveling when he was ticketed.

Bartunek also argues that a driver's denial that he was speeding is insufficient to create a material issue of disputed fact. ECF No. 81, Def.'s Resp. to Pl.'s Facts, at ¶ 5 In support, he cites *Jones v. City of Elkhart, Ind.*, 737 F.3d 1107, 1114 (7th Cir. 2013). *Jones* is distinguishable because the plaintiff in that case offered only habit evidence (his contention that he always obeyed the speed limit on the stretch of road at issue) to support his denial that he was speeding. In contrast, as discussed below, Norris has pointed to evidence that, when construed liberally, suggests a specific reason for his position that he was traveling at 45 mph. Thus, the motion to strike is denied.

B. Local Rule 56.1

Norris is an experienced *pro se* litigator. He has filed 14 federal civil rights lawsuits in this District, three federal civil rights lawsuits in the Central District of Illinois, and (according to his disclosures) 14 state court lawsuits. *See Norris v. Jewel-Osco*, Case No. 16 C 8819, ECF Nos. 1 and 5 (N.D. Ill.) (Durkin, J.). Norris filed numerous documents in opposition to Bartunek's motion for summary judgment:

- A "reply" (ECF No. 67) to the numbered paragraphs in Bartunek's motion for summary judgment;

- A "reply" (ECF No. 68) to Bartunek's memorandum supporting the motion for summary judgment;

- A statement of additional facts (ECF No. 69) that is captioned "Plaintiff's reply to Defendant's L.R. 56.1 statement of material facts;"

- An affidavit (ECF No. 70);

- A "reply" (ECF No.71) opposing Bartunek's affirmative defenses;

- Another longer "reply" (ECF No. 72) opposing Bartunek's affirmative defenses; and

- "Plaintiff's Response to Defense's Cheating Lies" (ECF No. 82), which the Court construes as a second affidavit opposing summary judgment.

These submissions are frequently repetitive. Moreover, although Bartunek filed a notice outlining the steps necessary to respond to a motion for summary judgment (ECF No. 55) as our rules require in cases prosecuted by pro se litigants, Norris did not submit a substantive response to Bartunek's facts, as required by the local rules. *See* L.R. 56.1(b)(3) ("All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party"). Instead, Norris' response to Bartunek's statement of facts (ECF No. 69) actually is a statement of additional facts. *See* L.R. 56.1(b)(3)(B).

3

Although courts construe *pro se* pleadings liberally, *see Thomas v. Williams*, 822 F.3d 378, 385 (7th Cir. 2016), a plaintiff's *pro se* status does not excuse him from complying with federal and local procedural rules. *See McNeil v. United States*, 508 U.S. 106, 113 (1993) (holding that "we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel"); *Collins v. Illinois*, 554 F.3d 693, 697 (7th Cir. 2009) ("even *pro se* litigants must follow procedural rules"). Nevertheless, Norris has presented his position and the supporting evidence he has marshaled in opposition to summary judgment in an understandable manner. Thus, notwithstanding the deficiencies in his submissions, the Court has interpreted his filings generously consistent with his *pro se* status and will construe his submissions and the record evidence in the light most favorable to him as the party opposing summary judgment, to the extent that he has pointed to evidence in the record or could properly testify himself about the matters asserted. *Sistrunk v. Khan*, 931 F. Supp. 2d 849, 854 (N.D. Ill. 2013); Fed. R. Evid. 602. With these standards in mind, the Court turns to the relevant facts.

**C.     Facts**

**1.     The Traffic Stop**

Bartunek asserts that on April 10, 2015, at approximately 9:16 p.m., he was on routine patrol driving west on East Laraway Road near the intersection of East Laraway Road and Loganberry Lane in Joliet, Illinois. (ECF No. 54, Def. SOF, at ¶ 3; Bartunek Aff., ECF No. 54-1, at ¶ 2.) According to Bartunek, he saw a vehicle traveling east on East Laraway that, based on his training and experience as a police officer, appeared to be exceeding the 45 mph speed limit. (Bartunek Aff., ECF No. 54-1, at ¶¶ 3-5.) He asserts that he confirmed his impression using a radar gun. (ECF No. 54, Def. SOF, at ¶ 6.) The record does not contain any radar gun data.

When Bartunek stopped the car, he asked the driver—who turned out to be Norris—if he knew how fast he was going. (*Id.* at ¶ 11.) Bartunek says Norris said he did not know how fast he was going because he had been speaking with his passenger. (*Id.* at ¶ 12.) Bartunek issued a speeding ticket with a $120 "promise to comply" bond and sent Norris on his way. (*Id.* at ¶ 15.) The stop lasted approximately ten minutes. (*Id.* at ¶ 19.) The ticket is attached to Bartunek's affidavit as Exhibit A (ECF No. 54-1, at p. 4). It indicates that Bartunek ticketed Norris for driving one to 10 miles over the posted speed limit in violation of 625 Ill. Comp. Stat. § 5/11-601(b) (the ticket specifically says Norris was traveling 55 mph in a 45 mph zone) and that Norris was pulled over when he was traveling "eastbound on Laraway approaching Loganberry." *Id.*

Norris has submitted an affidavit asserting that on the day of the traffic stop, he was driving eastbound from Joliet to Kankakee "at a constant rate of forty five (45) mph." (ECF No. at ¶¶ 3, 5-6; ECF No. 69, Pl.'s Add'l Facts, at ¶ 3.) It is undisputed that there were two passengers in Norris' car (an adult and a child). (ECF No. 54, Def. SOF, at ¶ 10; ECF No. 69, Pl.'s Add'l Facts, at ¶ 10.) According to Norris, "while driving [he saw] a fully marked Will County squad car" (ECF No. 70, Norris Aff., at ¶ 4), "which [was] no big surprise because the Sheriff's headquarters is nearby," (ECF No. 69, Pl.'s Add'l Facts, at ¶ 4.) The squad car began to follow Norris, who continued to drive while he observed the squad car behind him. (ECF No. 69, Pl.'s Add'l Facts, at ¶ 4.)

According to Norris, after he saw the squad car, he maintained his speed of precisely 45 mph. (*Id.* at ¶ 5.) As Norris puts it, "[n]o person of reasonable intellect would drive at one (1) to ten (10) mph faster than the posted Speed Limit with a fully marked, highly visible Will County Police Car there." (ECF No. 68, Pl.'s "Reply" to Def.'s Memo., at 5, PageID #152.) After the

5

squad car activated its lights, Norris pulled over. (ECF No. 70, Norris Aff., at ¶ 7.) Norris does not dispute that during the traffic stop, Bartunek "informed [Norris] that he thought [Norris] was driving at 55 mph." (ECF No. 69, Pl.'s Add'l Facts, at ¶ 12.) Norris, however, denies that he admitted to Bartunek that he had been speeding. (*Id.*)

### 2. State Court Proceedings

Following the traffic stop, Norris pleaded not guilty and requested a trial. (ECF No. 54, Def. SOF, at ¶ 25.) The parties agree that on June 30, 2015, Norris appeared for a bench trial. (ECF No. 81, Def.'s Resp. to Pl.'s Facts, at ¶ 21.) A state court judge dismissed the traffic case against Norris after Bartunek—who was the complaining witness—failed to appear. (*Id.* at ¶ 22.) Bartunek asserts he did not know that an appearance was necessary on that date, and that if he had known, he would have requested another trial date due to a scheduling conflict. (*Id.*; ECF No. 54, Def. SOF, at ¶¶ 21-22.) As detailed in his "response to defense's cheating lies" and elsewhere, Norris argues that the dismissal establishes that he was not speeding so Bartunek lacked probable cause to stop and ticket him. (ECF No. 82.)

## II. LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 951 (7th Cir. 2013). In deciding a motion for summary judgment, the court "review[s] the evidence in the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in its favor." *NES Rental Holdings, Inc. v. Steine Cold Storage, Inc.*, 714 F.3d 449, 452 (7th Cir. 2013); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The party opposing the motion for summary judgment "gets the benefit of all facts that a reasonable jury might find." *Loudermilk v. Best Pallet Co., LLC*, 636 F.3d 312, 314 (7th Cir. 2011). However, the opposing party cannot rely on mere conclusions and allegations to create factual issues. *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 320 (7th Cir. 2003). Nor can speculation be used "to manufacture a genuine issue of fact." *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008) (citing *Amadio v. Ford Motor Co.*, 238 F.3d 919, 927 (7th Cir. 2001)). A court will grant summary judgment "if no reasonable trier of fact could find in favor of the non-moving party." *Hoppe v. Lewis Univ.*, 692 F.3d 833, 838 (7th Cir. 2012) (internal quotation marks omitted); *see also Northbound Group, Inc. v. Norvax, Inc.*, 5 F. Supp. 3d 956, 966-67 (N.D. Ill. 2013). But "[i]t is not for courts at summary judgment to weigh evidence or determine the credibility of . . . testimony; we leave those tasks to factfinders." *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011) (quoting *Berry v. Chicago Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010)); *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (when considering a motion for summary judgment, the court must "avoid[] the temptation to decide which party's version of the facts is more likely true" because "summary judgment cannot be used to resolve swearing contests between litigants").

### III. DISCUSSION

**A.  Probable Cause—§ 1983 False Arrest Claim**

The existence of probable cause is an absolute defense to a false arrest claim. *See, e.g., Williams v. Rodriguez*, 509 F.3d 392, 398 (7th Cir. 2007). To state a Fourth Amendment false arrest claim based on a warrantless arrest, a plaintiff must allege that the arresting officer knew that no probable cause supported the arrest. *See Bianchi v. McQueen*, 818 F.3d 309, 321 (7th Cir. 2016). "Police officers possess probable cause to arrest when the facts and circumstances within

their knowledge and of which they have reasonably trustworthy information are sufficient to warrant a prudent person in believing that the suspect had committed an offense." *Williams*, 509 F.3d at 398 (internal quotations and citations omitted). Probable cause requires more than a bare suspicion of criminal activity, but it does not require evidence sufficient to support a conviction. *Holmes v. Vill. of Hoffman Estates*, 511 F.3d 673, 679 (7th Cir. 2007). When facts sufficient to create probable cause are undisputed, probable cause is a question of law. *Cervantes v. Jones*, 188 F.3d 805, 811 (7th Cir. 1999), overruled on other grounds by *Newsome v. McCabe*, 256 F.3d 747, 751 (7th Cir. 1999).

The Court does not evaluate probable cause based upon "the facts as an omniscient observer would perceive them," but instead considers the facts "as they would have appeared to a reasonable person in the position of the arresting officer." *Williams*, 509 F.3d at 398 (internal quotations and citations omitted). Thus, "a court looks at the conclusions that the arresting officer reasonably might have drawn from the information known to him rather than his subjective reasons for making the arrest." *Holmes*, 511 F.3d at 679; *see also Tebbens v. Mushol*, 692 F.3d 807, 819 (7th Cir. 2012) (a court must "examine [the arresting officer's] actions objectively—not in terms of his state of mind"); *Johnson v. Nichols*, No. 12 CV 5325, 2015 WL 5693114, at *3 (N.D. Ill. Sept. 28, 2015) ("Determining whether an officer had probable cause to arrest entails a purely objective inquiry; the officer's subjective state of mind and beliefs are irrelevant.").

"In most situations, a police officer's testimony that he believed a driver to be speeding based on his visual estimation and radar reading would be sufficient to establish probable cause and allow a police officer to stop the driver." *Retzlaff v. City of Cumberland*, No. 09-CV-692-SLC, 2010 WL 1780338, at *5 (W.D. Wis. May 3, 2010) (collecting cases). "Even so, there may

8

be a situation in which the plaintiff driver has presented facts that would allow a jury to infer that the police officer was lying about his visual estimation or radar reading." *Id* at *6 (citation omitted).

Bartunek contends that his perception as to Norris' speed and his purported radar gun reading gave him "probable cause, or at the very least reasonable suspicion" to stop Norris for speeding.[1] (ECF No. 53, Def.'s Memo., at 3-5; ECF No. 80, Def.'s Reply, at 8.) Bartunek first asserts that his perception about Norris' speed and the radar gun reading is undisputed. (ECF No. 80, Def.'s Reply, at 5.) This is incorrect; as noted above. Although Norris did not comply with Rule 56.1's technical requirements, his submissions clearly indicate that based on his purported personal observations on the night of the traffic stop, he challenges the reasonableness and truthfulness of Bartunek's assessment of his speed, as well as Bartunek's testimony regarding the alleged radar gun reading and Norris' purported admission that he was speeding.

Relatedly, Bartunek asserts that Norris' actual speed has no bearing on whether Bartunek's own perception was correct. His cited authority—*Malone v. City of Chicago*, No. 13 C 3900, 2016 WL 1169510, at *6 (N.D. Ill. Mar. 25, 2016)—does not support this proposition, however, as the parties in that case agreed that the officer had probable cause to conduct a traffic stop based on Malone's two broken headlights. Here, however, the parties dispute the factual basis for the traffic stop.

---

[1] An officer's "reasonable suspicion that criminal activity is afoot" based on particularized and objective facts indicating that a driver is engaging, or may be about to engage, in unlawful activity supports a traffic stop. *See United States v. Miranda-Sotolongo*, 827 F.3d 663, 666 (7th Cir. 2016) (citing *United States v. Uribe*, 709 F.3d 646, 649 (7th Cir. 2013), and *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968)). Consistent with the parties' briefs, the Court has focused on probable cause. Bartunek's alternative reference to reasonable suspicion does not affect the disposition of the pending motion for summary judgment because a material fact dispute exists regardless of whether Bartunek contends that the traffic stop was justified by reasonable suspicion or probable cause. Bartunek, though, seems to acknowledge that his decision to detain and ticket Norris must be supported by probable cause in the instant case and in the context of his motion for summary judgment: "Bartunek had probable cause to stop and detain Plaintiff for speeding, thus, Plaintiff's constitutional claim fails." (ECF No. 53, Def.'s Memo., at 3.)

In any event, the Court cannot say on this record that the objective evidence indisputably support's Bartunek's position—that Norris was traveling at a speed of 55 mph before he was stopped—is objectively reasonable as a matter of law. Norris says that he was traveling at precisely 45 mph because he saw Bartunek's marked police car and, to paraphrase Norris, only an idiot would exceed "the posted Speed Limit with a fully marked, highly visible Will County Police Car there." (ECF No. 68, Pl.'s "Reply" to Def.'s Memo., at 5, PageID #152.) If a jury accepted Norris' testimony, it would necessarily have to discredit one or more of the crucial building blocks of Bartunek's contrary testimony that (1) Norris was traveling in a "vehicle [that] appeared to be moving in excess of the 45 mph posted speed limit," (2) his radar unit confirmed that Norris' speed was "in excess of 45 mph," and (3) he had a basis for stating that Norris was traveling at 55 mph when he filled out the ticket, including (4) Norris' purported admission to that effect which Norris denies making. (ECF No. 54-1, Bartunek Aff., at ¶¶ 3, 5; p. 4.)

"Where the parties present two vastly different stories" regarding a critical fact, "it is almost certain that there are genuine issues of material fact in dispute." *Payne*, 337 F.3d at 770. In resolving Bartunek's motion for summary judgment, the Court cannot simply credit his version of events and reject Norris' contrary testimony. *See id.*; *see Large v. Pearce*, No. 2:09-CV-00309-JMS-WG, 2010 WL 3614294, at *3 (S.D. Ind. Sept. 7, 2010) (holding that an officer's "subjective version of events is not conclusive" as probable cause "is not a subjective determination based on the officer's knowledge of the facts" so "a party can defeat summary judgment by showing a that there is an issue of fact as to the existence of probable cause") (internal quotations omitted).

Alternatively, Bartunek contends that Norris' denial that he was speeding is not enough to survive summary judgment because "no documentary evidence" rebuts Bartunek's assertion

that probable cause existed. (Dkt. 80, Def.'s Reply, at 7; Dkt. 81, Def's Resp. to Pl.'s Facts, at ¶ 5.) In support, Bartunek directs the Court's attention to *Jones*, 737 F.3d at 1114. In *Jones*, the Seventh Circuit held that the plaintiff's claim that he was not speeding because he was always careful to obey the speed limit when driving on the stretch of road at issue "does nothing to rebut the fact that [the police officer] reasonably believed [plaintiff] was speeding, or to put into question the accuracy of the radar gun . . . ." *Id.*

*Jones* is consistent with other Seventh Circuit precedent about habit-based arguments in the context of traffic stops. For example, in *Williams v. Brooks*, 809 F.3d 936 (7th Cir. 2016), the plaintiff testified at his deposition that his "habit is to put his turn signal on as he enters a turn lane." *Id.* at 942. The court found that this was insufficient to create a disputed issue of fact because the plaintiff did "not testify that he signaled on the night in question." *Id.* at 942-43. The court concluded that given the officer's testimony that he saw the plaintiff change lanes without signaling, the plaintiff's "statement about his normal habit is not enough for us to infer that he signaled this particular lane change." *Id.* at 943; *see also Mudd v. City of New Haven*, — F. Supp. 3d —, 2016 WL 3971562, at *8 (N.D. Ind. July 25, 2016) (granting officer's motion for summary judgment, despite plaintiff' denial that he did not speed and was not drunk, because the officer relied on his own perceptions and a field sobriety test, which objectively showed that he "had sufficient trustworthy information to believe that [plaintiff] committed the offenses of speeding and driving while intoxicated, thereby providing probable cause for his arrest on both charges").

The question, therefore, is whether Norris has merely denied he was speeding or whether he has pointed to evidence that could support an inference that Bartunek's purported belief about the speed of Norris' vehicle was not only incorrect but also objectively unreasonable. *See*

11

*Retzlaff*, 2010 WL 1780338 at *6 (noting that "there may be a situation in which the plaintiff driver has presented facts that would allow a jury to infer that the police officer was lying about his visual estimation or radar reading," such as an officer's refusal to produce a radar gun or history of discipline relating to stops). On the record developed thus far in the context of Bartunek's motion for summary judgment, Norris has pointed to enough evidence to put that issue to the trier of fact.

As noted above, Norris asserts that "[n]o person of reasonable intellect would drive at one (1) to ten (10) mph faster than the posted Speed Limit with a fully marked, highly visible Will County Police Car there." (ECF No. 68, Pl.'s "Reply" to Def.'s Memo., at 5, PageID #152.) He also specifically states that he was traveling at a "constant" and "exact" rate of 45 mph prior to the stop. (ECF No. 69, Pl.'s Add'l Facts, at ¶ 3—Norris was driving eastbound from Joliet to Kankakee "at a constant rate of forty five (45) mph"; *id.* at ¶ 6—Norris' speed was "exactly forty five (45) mph"; ECF No. 70, Norris Aff. at ¶ 23—Norris "was not speeding" because he "drove at a constant 45 mph" on the night of the traffic stop and thus "did not drive at a speed over the posted speed limit").

It also is noteworthy that Bartunek does not say when he deployed his radar gun and obtained a reading that Norris was exceeding the speed limit. Bartunek says in his affidavit that he first saw the car he later determined was being driven by Norris when it was traveling eastbound on East Laraway Road as Bartunek was traveling westbound on the same road. (Bartunek Aff., ECF No. 54-1, at ¶ 3.) According to Bartunek, "[h]aving made that visual determination, I then activated the radar unit mounted in my squad car, which registered and displayed the speed of [Norris' car] in excess of 45 mph." (*Id.* at ¶ 5.) Bartunek says "based on my observations and the confirmation from the radar unit that the vehicle was speeding" he

activated his emergency lights and stopped Norris' vehicle. (*Id.* at ¶ 6.) It is not clear from the record where Bartunek was in relation to Norris' vehicle when he did activate his radar unit. It also is not clear when during this encounter Norris saw a "fully marked Will County squad car" so that he was sure to maintain a constant rate of 45 mph while he was driving and presumably being observed by Bartunek. (ECF No. 70, Norris Aff., at ¶¶ 4, 5.)

As the movant, Bartunek ultimately bears the burden to convince a court that he is entitled to judgment as a matter of law. He has not done so in this case. As discussed above, it is well established that when considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party and must draw all reasonable inferences in his favor. *See Anderson*, 477 U.S. at 255. Doing that in this case, based on the current state of the record, places Norris and Bartunek on a level playing field. Drawing reasonable inferences in favor of Norris as the non-moving party, the Court must accept for the purpose of summary judgment that he confirmed that he was traveling at 45 mph at the relevant time in the only and most sensible way available to him: by looking at his speedometer. Bartunek's position is that he confirmed his perception that Norris was speeding in the only way available to him: by using his radar gun. He then decided to stop and ticket Norris.

Based on this record, a reasonable jury could conclude that Norris saw Bartunek's squad car before Bartunek saw Norris, and that Norris checked his speed and maintained it at the speed limit before Bartunek clocked Norris with a radar gun. On the other hand, a reasonable jury also could conclude on this record that Norris did not see Bartunek until his squad car was behind his car and after Bartunek had clocked Norris with his radar gun as exceeding the speed limit. This means that probable cause is a jury question, as probable cause may be decided by the Court only "when there is no room for a difference of opinion concerning the facts or the reasonable

inferences to be drawn from them." *Morris v. Smith*, No. 14 C 8076, 2016 WL 3671428, at *2 (N.D. Ill. July 11, 2016) (quoting *Neiman v. Keane,* 232 F.3d 577, 580 (7th Cir. 2000)). Accordingly, the Court cannot find, as a matter of law, that Bartunek's decision to stop and ticket Norris was constitutionally permissible as a matter of law. *See Ross v. Meyers*, 883 F.2d 486, 488 (6th Cir. 1989) ("even [the police officer defendant's] 'undisputed facts' do not conclusively support a finding of probable cause" because a reasonable jury "was entitled to reject [the officer's] testimony in its entirety" and accept plaintiff's explanation why his breath had an "odor of alcohol," his eyes were bloodshot, and he was "staggering"). Thus, Bartunek's motion for summary judgment on the merits of Norris' § 1983 claim is denied.

B. **Qualified Immunity—§ 1983 False Arrest Claim**

Bartunek contends, in the alternative, that he is entitled to qualified immunity. "Qualified immunity protects government officials from civil liability when they perform discretionary functions so long as 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Alvarado v. Litscher*, 267 F.3d 648, 652 (7th Cir. 2001) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). It "gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Lane v. Franks*, 134 S. Ct. 2369, 2381 (2014) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, ___, 131 S.Ct. 2074, 2085 (2011)). When evaluating whether qualified immunity applies, the court must ask "two questions: (1) whether the facts, taken in the light most favorable to the plaintiff, make out a violation of a constitutional right, and (2) whether that constitutional right was clearly established at the time of the alleged violation." *Alvarado*, 267 F.3d at 652; *see also Lane*, 134 S.Ct. at 3281.

In the context of a constitutional challenge to an arrest, "an officer is entitled to qualified immunity if a reasonable officer could have mistakenly believed that probable cause existed based on the clearly established law at the time of his actions." *Burritt v. Ditlefsen*, 807 F.3d 239, 250 (7th Cir. 2015) (internal quotations omitted). This is sometimes referred to as "arguable probable cause," the determination of which should be made separately and distinctly from a determination of actual probable cause. *Id.* "Based as it is on probabilities rather than hard certainties, the probable-cause standard inherently allows room for reasonable mistakes." *Gutierrez v. Kermon*, 722 F.3d 1003, 1008 (7th Cir. 2013). Thus, if an officer "reasonably, albeit possibly mistakenly, believed that probable cause existed," he is entitled to qualified immunity. *Burritt*, 807 F.3d at 250.

As discussed above, a fact question exists as to the constitutional propriety of Bartunek's decision to stop and ticket Norris. For the purposes of qualified immunity, the Court must accept the facts in the light most favorable to Norris (*i.e.*, that Bartunek stopped and ticketed him due to his clearly erroneous belief that Norris was speeding). *See Weinmann v. McClone*, 787 F.3d 444, 446 (7th Cir. 2015) (noting that when determining if the defense of qualified immunity is available at the summary judgment stage, the court must "accept the plaintiff's version of the facts, without vouching for their ultimate accuracy"). It is well-established that an officer cannot stop a motorist without at least a reasonable suspicion that a traffic violation has occurred. *See, e.g.*, *Brendlin v. California*, 551 U.S. 249, 263 n.7 (2007) (collecting cases). If there is "doubt about what reasonable jurors would infer about why [police] officers acted as they did," the officers are not entitled to qualified immunity. *Nettles-Bey v. Williams*, 819 F.3d 959, 960 (7th Cir. 2016).

Here, as with the merits, the Court cannot choose between competing versions of the facts. Instead, it must, for present purposes, accept Norris' account. Given that, Bartunek is not entitled to qualified immunity. *See Dyson v. Vill. of Midlothian*, No. 12-CV-7632, 2015 WL 778850, at *9 (N.D. Ill. Feb. 18, 2015) (concluding that the defendant officer was not entitled to qualified immunity from liability arising from a traffic stop; "[w]hile a good-faith belief . . . Plaintiff was speeding would be enough to entitle [the officer] to qualified immunity, immunity would not attach if—as Plaintiff alleges—[the officer] never truly believed Plaintiff to be speeding and in fact stopped Plaintiff for reasons relating to racial profiling").

C. **State Law Claims—False Imprisonment and Malicious Prosecution**

Because Norris has survived summary judgment as to his § 1983 claim, the Court must consider his state law claims. To establish false imprisonment under Illinois law, "a plaintiff must allege that the defendant caused or procured a restraint of the plaintiff without reasonable grounds to believe that the plaintiff was committing an offense." *Henderson v. City of Chicago*, No. 14 C 1164, 2016 WL 3653532, at *8 (N.D. Ill. July 8, 2016) (citing *Randall v. Lemke*, 726 N.E.2d 183, 186 (Ill. App. Ct. 2000). The existence of probable cause defeats a state law false imprisonment claim. *Hull v. City of Chicago*, 624 F. App'x 436, 439 (7th Cir. 2015); *Poris v. Lake Holiday Prop. Owners Ass'n*, 983 N.E.2d 993, 1007 (Ill. 2013). As with Norris' § 1983 false arrest claim, fact questions exist regarding Bartunek's decision to stop Norris based on alleged speeding. Thus, summary judgment is not warranted as to Norris' state law false imprisonment claim.

To establish malicious prosecution under Illinois law, a plaintiff "bears the burden of proving that (1) the [County] initiated criminal proceedings against him; (2) those proceedings were terminated in his favor; (3) there was no probable cause to support the proceedings; (4)

malice was present, *i.e.*, that the officer who initiated the proceedings was motivated by something other than a desire to bring a guilty party to justice; and (5) he suffered damages as result of the proceedings." *Seiser v. City of Chicago*, 762 F.3d 647, 659 (7th Cir. 2014). Bartunek focuses on whether the record shows that the underlying criminal proceedings were terminated in a manner suggesting innocence, given Norris' failure to point to any evidence challenging Bartunek's contention that he failed to appear for trial due to a scheduling error. But this is of no moment, because, as discussed above, there is a fact question regarding probable cause. Thus, summary judgment is not warranted as to Norris' state law malicious prosecution claim.

## IV. CONCLUSION

For all of the reasons set forth above, Bartunek's motion for summary judgment (ECF No. 52) is denied in its entirety. This case is set for a status hearing on February 9, 2017, at 10:30 a.m. to set a trial date and dates for pretrial submissions. If Norris is in custody, defense counsel should arrange for him to appear by telephone. If Norris is not in custody, then he should appear for the status hearing in person.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: January 27, 2017